# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

IN RE:

Florida First City Banks, Inc.,           Case No.: 20-30037-KKS
                                                   Chapter 11
      Debtor-in-Possession.

## DECLARATION OF GREYSON E. TUCK

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

BEFORE ME, the undersigned authority, personally appeared Greyson E. Tuck who being first duly sworn, submits the following declaration as an offer of proof of testimony to be given during the hearing (the "Sale Hearing") in the above-styled matter on the Debtor's *Motion for Orders Pursuant to U.S. C. §§ 105(a) and 363(b); Fed. R. Bankr. P. 2002, 6004, 9014, and 9019; (I) Approving (A) Bidding Procedures and (B) The Form and Manner of Notice of (i) The Sale of Certain Assets and (ii) Granting Related Relief; (II) Authorizing and Approving (A) The Sale of Certain Assets and; (III) Waiving the 14-Day Stay of Fed. P. Bankr. P. 6004(h) and Request for Emergency Hearing to Consider Bidding Procedures (doc. 11)* (the Motion"), which Sale Hearing has been duly noticed for March 26, 2020, at 10:00 a.m. (Eastern Time):

1. My name is Greyson E. Tuck.

2. I am a licensed attorney in the State of Tennessee. I am a member of the Board of Directors of both the Memphis based law firm of Gerrish Smith Tuck, P.C, and Gerrish Smith Tuck, Consultants, LLC. These two firms have assisted numerous community banks in virtually every state across the nation. My legal and consulting practice places special emphasis on community bank holding company formation and use, community bank mergers and acquisitions, regulatory matters, corporate reorganization, corporate taxation, general corporate law and community banks strategic planning.

3. By Order of the Court, dated February 26, 2020, I, and the two above referenced firms, were authorized to market the sale of First City Bank of Florida, Fort Walton Beach, Florida through a sale of its stock, 100% of which is owned by the Debtor.

4. This Declaration is submitted as an offer of proof of my testimony for the Sale Hearing.

5. The following is a summary of marketing efforts undertaken with respect to the Debtor's primary asset, which is 100% of the stock (the "Stock") of First City Bank of Florida (the "Bank"):

    a) Prior to the filing of the bankruptcy petition by the Debtor

commencing this case, I was previously retained on October 13, 2017 to attempt to locate a purchaser for the Bank common stock in an effort to avoid the failure of the Bank.

b)   A redacted timeline of the efforts undertaken by me and others assisting me in my firm during my prior representation between October 13, 2017 and August 17, 2018, is attached hereto as Exhibit "1".

c)   Those efforts included compiling a list of potential acquirers believed to be possibly interested in the acquisition of Bank and whom were believed likely to be able to obtain the regulatory approval and raise the capital necessary to consummate an acquisition and recapitalization of Bank; contacting such potential buyers and securing confidentiality agreements and non-disclosure agreements; various formal and informal discussions and negotiations with potential purchasers; and negotiating letters of intent and securing board approval from the Debtor and Bank. In total, I contacted 21 potential acquirers, sent 18 confidentiality agreements, secured 16 such agreements, and conducted onsite due diligence with 3 potential acquirers.

d)   In May 2018, the Debtor executed an Indication of Interest with a Mississippi-based national bank. The specifics of such agreement are subject to a

non-disclosure agreement, but the Debtor did conduct due diligence with such bank through July 2018, when the bank ceased continued interest in acquiring the Bank.

  e) In August 2018, the Debtor and Bank executed an Indication of Interest with SouthernTrust Group ("**STG**"), a private equity group identified by me. The terms of such agreement were similar to the terms of the transaction contemplated by the Bidding Procedures Motion, but are likewise protected by a non-disclosure agreement. Consistent with industry standards for the acquisition of community banks, the Indication of Interest required Debtor and Bank to provide STG transaction exclusivity, meaning Debtor and Bank would not solicit competing transactions during STG's active pursuit of acquisition of Bank. Applications seeking the required approvals for a change in control of the Bank were filed by STG with the Federal Reserve, Federal Deposit Insurance Corporation and Florida Office of Financial Regulation in February 2019, followed by various efforts to obtain approval. Ultimately, such approval was not obtained by the June 30, 2019, deadline

  f) In August 2019, the Debtor entered into a non-disclosure agreement with the Beach Community Bank and Beach Community Bank commenced due diligence on Bank. Such due diligence ultimately resulted in the Merger Agreement attached to the Bidding Procedures Motion and the proposed transaction contemplated thereby.

g)     Upon my approval as Marketing Professional in this Chapter 11 case, I immediately began compiling marketing materials to be distributed to banks, credit unions or other individuals or entities thought to be possibly interested in bidding on the sale of the Bank stock owned by the Debtor.

h)     Attached as Exhibit "2" to this Affidavit is the Notice of Community Bank Acquisitions Opportunity through Section 363 Bankruptcy Sale Process and accompanying marketing materials ("Notice and Marketing Information Memorandum") which were prepared for the purpose of marketing the sale of the Bank stock.

i)     The Notice and Marketing Information Memorandum was emailed to each of the original recipients of the marketing materials related to First City Bank of Florida who were contacted during the marketing efforts prior to the Chapter 11 case being filed by the Debtor, consisting of 36 recipients. Four of the recipients were provided with hard copies by mail. Additionally, at approximately Noon, Central Standard Time, on March 4, 2020, our firm distributed an email notice to every individual on our firm's master email list. This included over 7,600 recipients, which are all banking and banking related individuals within the United States.

j)     Additionally, we emailed and provided hard copies by regular U.S. mail, a copy of the marketing materials to approximately 75 banks that met the

following criteria:

> -commercial bank headquartered in Alabama, Florida, Georgia or Mississippi
>
> -total assets greater than $500,000,000.00
>
> -non preforming assets less than 2%
>
> -last twelve months return on average assets greater than .5%

k) The email distribution as outlined above was sent through our firm using Constant Contact. According to the Email Activity Report provided by Constant Contact, the email was sent to 7,672 email addresses and there were 4,892 successful deliveries. Of these 4,892 successful deliveries, 1,613 recipients opened and viewed the email notice. Of those opening the email, 176 (10.9%) clicked through the email to access the Memorandum.

l) In addition to the distributions outlined above, we also ran a public notice in the *USA Today*. The public notice was published on Monday, March 9; Wednesday, March 11 and; Friday, March 13. The public notice resulted in approximately seven interested parties contacting me to request the Memorandum, which was sent to each of the requesting parties. The language of the public notice is set forth in the marketing update attached as cumulative Exhibit "5".

m) During the marketing process, one potential acquirer expressed potential interest in seeking qualification as a Permitted Bidder. This party is United

Fidelity Bank in Evansville, Indiana. I provided to them the Confidentiality Agreement required to become a Permitted Bidder. They did not return the executed Confidentiality Agreement or otherwise provide documentation required by the bidding instructions to qualify as a Permitted Bidder.

7. Attached to this affidavit as Exhibit "3" is a copy of my "Activity Log" related to the marketing of First City Bank of Florida.

8. Based on my experience, it is my opinion that the marketing efforts which have occurred as outlined above, were commercially reasonable and represent an appropriate outreach to potential buyers. Further, it is my opinion that further marketing efforts will not result in a proposed transaction that is more beneficial to the Debtor's estate than the transaction contemplated with Beach Community Bank.

9. Based on my experience, it is my opinion that failure to consummate the transaction with Beach Community Bank will result in the failure of the Bank, which will result in the Debtor's estate receiving nothing for distribution to creditors.

10. In addition to serving as marketing professional, I have also been monitoring the regulatory aspects related to the proposal to merge First City Bank of Florida with and into Beach Community Bank. As such, I am personally aware that the Florida Office of Financial Regulation has issued preliminary approval of Beach Community Bank's acquisition of First City Bank of Florida through the proposed merger transaction. Attached as Exhibit "4" is a true and correct copy of

correspondence, dated March 3, 2020 from the Florida Office of Financial Regulation to Beach Community Bank's counsel stating that the Office of Financial Regulation intends to approve the application.

11. Attached hereto as cumulative Exhibit "5" are the weekly marketing updates which I provided to Debtor's Counsel, dated March 4, 2020; March 11, 2020, and March 19, 2020. The statements set forth in each update are true and correct and accurately represent the marketing efforts which I have undertaken.

FURTHER AFFIANT SAYETH NAUGHT

_____
Greyson E. Tuck

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, the undersigned notary public, by means of [✓] physical presence or [ ] online notarization, personally appeared Greyson E. Tuck, who is personally known to me or who produced TN Driver License as identification and executed the above affidavit on this 20th day of March, 2020.

_____
NOTARY PUBLIC
Commission Expires: 03-30-2020
Commission No.: N/A

## Index of Exhibits

1. Timeline of Marketing Activities 10/13/17 to 8/17/18 (redacted)

2. Notice of Community Bank Acquisitions Opportunity Through Section 363 Bankruptcy Sale Process and Marketing Materials

3. Marketing Activity Log

4. March 3, 2020 Correspondence from Florida Office of Financial Regulation to John P. Greeley

5. Composite Exhibit of Marketing Activity Updates, dated March 4, 2020; March 11, 2020; March 18, 2020